Judge Underwood
delivered the opinion of the court.
On the 19th of October, 1821, Davis Caldwell conveyed a large tract of land to Joseph Morgan, J. P. Williams, and Robert Boyce, the conveyance to be void on this condition, to wit: “should the said Caldwell well and truly pay all such suln or sums for which the said Morgan. Williams, and Boyce, or either of them have bound themselves, *402 or may bind themselves as security for said Caldwell, and release and free the said Morgan, Williams, and Boyce from the whole of the debts or demands they or either of them have or may bind themselves as aforesaid, and in all respects keep the said Morgan, Williams, and Boyce, and each of them, entirely free and indemnified from all manner of damage or loss, by means of their becoming security as aforesaid, then this conveyance shall be void, &c.” The preamble to the conveyance recites various obligations in which the grantees were already bound as sureties for the grantor, and then adds a clause showing that Caldwell had requested the grantees to become his sureties “generally, in all such replevin bond and injunction bonds as he, said Caldwell, may have occasion or deem it proper to give.”
On the 27th March, 1823, D. Caldwell executed a deed purporting to convey to John Hughes 503 acres of the land previously conveyed to Morgan, Williams, and Boyce. The consideration of this deed is $6,539. On the same day, G. Caldwell and B. H. Perkins released to said Hughes all their claim to said land.
On the 17th December, 1825, D. Caldwell, Geo. Caldwell, and Benj. H. Perkins executed jointly', a deed to Sami. K. Nelson, for the consideration of $12,000, purporting to convey about 900 acres of the land previously conveyed to Morgan &c.
On the 21st of September, 1824, Boyce replevied a debt by becoming surety for D. and G. Caldwell, amounting to $751 27, that sum being the aggregate of the bond. This debt Boyce paid on the 25th of September, 1826, then, including interest, amounting to $841 40. To subject the land conveyed to Morgan &c. to the payment of this sum, the Caldwells having become insolvent, Boyce filed his bill.
On the 21st of May, 1823, J. P. Williams and G. A. Tomlinson, as sureties for G. and D. Caldwell, united in the execution of a supersedeas bond to Sarah Harlan. Williams, on the 15th of April, 1828, upon his responsibility thus incurred, paid $1,495 711. To obtain indemnity and to subject the land con *403 veyed to Morgan, &c. lie made his answer to Boyce’s bill operate as a bill against the Caldwells &c.
Stipulation against responsibility afterwards to valid, and ’ creates lien on property conveyed.
Though the particular bond in which security ¡sentered be, not ^"pcHalfyet theinténtion ofthe Part’es being to indemnify against all suretyships which mortgagees might enter into for raortgogor, the court construes the the mortgage to extend to eaoh bond.
*403 On the 15th November, 1821, D. Caldwell executed a mortgage to George Caldwell and Benj. H. Perkins, in which he conveys or attempts to do so, 1200 acres of land, on which he then resided, to secure them against loss for having become his sureties for upwards of $15,000 “ in bank and otherwise.”
In July, 1822, D. Caldwell’s equity of redemption in the land embraced by the mortgage last aforesaid, was sold by B. Prather, a deputy sheriff, in virtue of sundry executions, and purchased by Benj. H. Perkins at the bid of $2,500.
On the 15th April, 1828, Prather executed a deed to Perkins.
The circuit court decreed the satisfaction of the demands set up by Boyce and Williams, out of the mortgaged estate, in case the money was not paid by a given day, and in case George Caldwell did not remove the incumbrance upon the estate sold and conveyed to Nelson by a day' fixed, then the heir of Nelson was to be indemnified by a sale of the estate mortgaged to his ancestor by said Caldwell.
_ It is here contended that the decree is altogether erroneous, because the debts which Boyce and Williams have paid are not embraced by the mortgage in their favor. We are of opinion that the mortgage docs embrace them. The liability of Boyce grew out of the execution of a replevin bond, a class of instruments expressly provided for by the mortgage. In regard to the demand set up by Boyce, we perceive no ground on which a plausible doubt can rest.
The bond executed by Williams was neither a replevin, nor an injunction bond technically speaking; and if the mortgage does not embrace any bond, unless it be of one or the other of these classes, executed after the date of the mortgage, then it may be admitted that the supersedeas bond executed by Williams is not embraced, and consequently no lien attached to the land to indemnify Williams. We . ... : — ;n c,,,,,!, ^ critical construction of the *404 provisions of the mortgage against what seems to have been the clear intention of the parties. The title of the estate was vested by the mortgage in Morgan, Boyce, and Williams. They were to hold it until released from all liability on account of suretyships then contracted, or which might thereafter be contracted. This is the obvious meaning and indeed the letter of the defeasance whicli the mortgage contains; and therefore we shall not burden Williams with the loss, because of the omission to insert supersedeas bonds in that part of the conveyance which recites that Caldwell had requested the mortgagees “ to become his sureties generally in all such replevin and injunction bonds as he may have occasion to give.”
tío fnr as notice results from recording deeds, the Statutes regard the transfer of the legal title only. A pri- or mortgagee •is not bound to know the subsequent transactions between his mortgagor and third persons; advances made or liabilities incurred on the faith ot his mortgage, cannot he superceded by subrequen t mortgage upon constructive nolKPj resulting from rnc re registra-, tion , there must be actual notice pri- or to such ari-v vane*1 »t re-sj^oasibilifej*.
*404 It is next contended that the execution of the subsequent mortgage in November 1821, to Geo. Caldwell and B. H. Perkins, and the levy and sale of D. Caldwell’s-equity of redemption in July, 1822, and the purchase thereof by Perkins, are sufficient grounds to defeat the demands of Boyce and Williams, growing out of subsequent transactions.
We admit that a prior mortgagee, after notice of the execution of a subsequent mortgage, cannot place additional incumbrances upon tire estate by new advances to the mortgagor, or by any new transaction with the mortgagor, and thereby prejudice the subsequent mortgagee. Where the equity of redemption is sold, and purchased, bona jxde, we likewise concede that the mortgagee with notice could not place new incumbrances upon the estate to the prejudice of the purchaser. But we think Perkins does not occupy either the situation of a subsequent mortgagee or purchaser in reference to the claims of Boyce and Williams, so as to effect their rights. Admitting that he is a subsequent mortgagee in good faith, there is no evidence that Boyce and Williams, or either of them, ever had notice of the mortgage to him, unless the recording of the-subsequent mortgage be notice. Our statutes, regulating convey anees, and directing the mode of recording deeds, and prescribing the effect of theif registration, seem to have an eye to creditors and subsequent purchasers. There is no act of the gen. *405 'eral assembly which we have met with, that gives a lien in behalf of a subsequent mortgagee ior the amount of his debt, to the exclusion of an advance made at a later period than the execution of the subsequent mortgage, by the prior mortgagee, merely because the subsequent mortgage has been recorded in due,time. In other words, there is no act of assembly which requires a prior mortgagee, who has received the legal title, to take notice of transactions which the mortgagor and third persons may place upon the records of the county. If such a thing were required by law, it would be necessary for a-mortgagee who took a mortgage similar to that taken by Boyce and Williams, to indemnify against liabilities to be contracted at a future day, to examine the clerk’s office the moment before incurring them. Even that precaution might not enable a prior mortgagee to act with safety; for at that time there may be an existing mortgage which will be brought forward for record within sixty days, and thus the notice would relate to the day of its execution, and Overreach the now equity between the prior mortgagee and mortgagor.Such a doctrine cannot prevail. A puisne mortgagee, who gets the legal title from the first mortgagee, may avail himself of its advantage, anc{ thus protect himself against an intermediate mortgagee—Bank of Kentucky vs. Vance’s Administrators, IV Litt. 173. Much more should the first mortgagee, who makes an advance upon the faith of the legal title, already in him, and without knowledge at the time of any attempt, on the part of the mortgagor, to incumber the estate* by creating liens in favor of others, he preferred. Oar laws regulating conveyances regard the transfer of the legal title only so far as notice results from the act of registering or recording the deed. Such is the necessary inference from the above cited case, in which Vance relied upon a junior mortgage, and the legal effects resulting from having had it recorded in clue time.
The subsequent mortgage to Perkins, unless there had been proof of actual notice to Boyce and Williams, cannot operate against the decree. If the record had furnished such proof, i.t cvoukl then have *406 been necessarj’ to consider the circumstance, that Perkins has not shewn a payment of any debt for D. Caldwell, beyond the amount of money, which, it may fairly be inferred from the testimony in the cause, he was reimbursed out of the funds arising from the sale of the land to Hughes and Nelson. Perkin's has failed to shew the continuance and existence at this time of any liability for D. Caldwell.
Kale of equity sheriff>iÍOn dues not ^ f_ foct ,.rior "Tthoutacfu al notice of ' snlo.
None but party injured can comp am.
mort^odf preñases will satisfy n.ortcefior witi*" protect inter mediato purchaser of parí when^ale is decreed.
The sale made by Prather of D. Caldwell’s equity °f an(I purchase by Perkins, cannot affect the claims of Boyce and Williams: first, because, from the evidence, Perkins made the purc*lase f°r Caldwell’s benefit, and has been repaid a,1y advances he may have made; and, secondly, because there is no proof that Boyce and Williams were notified of the sale of the equity of redemption, before they became bound for the debts for which they are seeking reimbursement.
The only remaining objection, which we shall no-against the decree, is, that the 503 acres of land conveyed to Hughes, in 1823, should have borne a proportion of the sums decreed in favor of Boyce and Williams, if the decree, in this respect, could be reversed by Boyce and Williams, yet, if the other parties have not been injured, Boyce and Williams not complaining, the decree must be affirmed.
If D. Caldwell had retained the land which he sold to Nelson, the chancellor, in foreclosing-the mortgage after the sale to Hughes, would certainly have violated the most obvious equity if he had not protected the purchase made by Hughes, provided the residue of the land was sufficient to discharge t|ie m0rtgage. The mortgagees could require 110th-“ig but indemnity, and if that could be obtained without interfering with third persons, it ought to be done. Now it is clear from Nelson’s answer, that hehad notice of Hughes’ purchase. The record of the mortgage to Boyce and Williams was a notice of its existence, and with a knowledge of these facts, Nelson steps into the shoes of D. Caldwell by purchasing the residue of the land. He ought not thereby to make Hughes’ condition worse than it would have been if he had not purchased, and therefore we think he has no right to *407 complain. He took the precaution to guard against danger by taking a mortgage on the property of George Caldwell, for .whom Boyce and Williams were sureties as well as for Davis Caldwell We shall, therefore, leave Nelson’s heir to look to George Caldwell, whose property, going to indemnify him, will leave a fund to exonerate the sureties, and thus effectuate justice all around.
Crittenden and Owsley, for appellants.
The decree must be affirmed, with costs.